UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH KATHERINE B.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

_____/

Case No. 24-13168

Curtis Ivy, Jr.
United States Magistrate Judge

**OPINION AND ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT (ECF Nos. 8, 10)**

## I.    INTRODUCTION

Plaintiff Elizabeth Katherine B. filed a Title II application for a period of disability and disability insurance benefits on January 26, 2022, alleging disability beginning on April 1, 2021.  (ECF No. 5-1, PageID.83).  The application was denied at the initial administrative level on September 8, 2022, and upon reconsideration on October 21, 2022.  (*Id.* at PageID.167–88).  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on September 30, 2023.  (*Id.* at PageID.101–37).  Following the hearing, the ALJ issued an unfavorable decision on November 7, 2023, and the Appeals Council denied Plaintiff's request for review on September 30, 2024.  (*Id.* at PageID.18–21, 80–94).  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security ("Commissioner").  *See Kearney v. Colvin*, 14 F.

Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 F.

App'x 570 (6th Cir.2003); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832

(6th Cir. 2006).  The case is now before the court for review of that decision under

42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to

the conduct of all proceedings and entry of a final judgment by the undersigned

United States Magistrate Judge.  (ECF No. 3).

After careful scrutiny of the record and the parties' briefs, and for the

reasons below, Plaintiff's *Motion for Summary Judgment* (ECF No. 8) is

**DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 10) is

**GRANTED**, and the administrative decision is **AFFIRMED**.

## II.   STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  When

reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made

pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582

F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d

234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. N.L.R.B.*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration ("SSA")] fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.   STATUTORY AND REGULATORY FRAMEWORK

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[1]  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

## IV. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 59 years old on the date last insured. (ECF No. 8, PageID.839). She reported completing four or more years of college, and her primary complaints are bipolar disorder, anxiety, depression, COVID-19, dizziness, brain fog, distractibility, lack of focus, and hypothyroidism. (*Id.* at PageID.837, 839). In the past, Plaintiff worked as an office manager for a golf course and a retail merchandising field service representative. (*Id.* at PageID.839).

In her decision, the ALJ first observed that a different ALJ adjudicated Plaintiff's prior claim on March 25, 2019, and noted that Sixth Circuit precedent required her to consider the case in accordance with Acquiescence Rulings ("AR") 98-3(6) and 98-4(6). (ECF No. 5-1, PageID.83); *see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (invoking principles of *res judicata* to hold that "where the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances"). When adjudicating a subsequent disability claim involving an unadjudicated period, AR 98-3(6) and 98-4(6) instruct that:

> an ALJ must adopt a prior decision's findings of fact with respect to a claimant's past relevant work demand, date of birth, education, work

experience, and [Residual Functional Capacity ("RFC")], "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding."

*Marquitta B. v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-1276-TMP, 2025 WL 959946, at *12 (W.D. Tenn. Mar. 31, 2025) (citing AR 98-3(6), 1998 WL 283901, at *3 (June 1, 1998); AR 98-4(6), 63 FR 2977-01, 1998 WL 274052, at *29773 (June 1, 1998)); *see also Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931, 933–34 (6th Cir. 2018) (holding that principles of *res judicata* in a subsequent application for an unadjudicated period of time do not bind the ALJ to a prior decision or bar her from "giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability").  Though AR 98-3(6) and 98-4(6) were rescinded as of December 2, 2024, the ALJ issued her decision here before that date and so appropriately applied the ARs to her evaluation of Plaintiff's case.  *See id.* at *12 n.5 (citing *Earley*, 893 F.3d at 933–34).

Next, the ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2022.  (ECF No. 5-1, PageID.85).  Accordingly, Plaintiff had to establish that she was disabled by that date.  *See Henley v. Comm'r of Soc. Sec.*, 58 F.3d 210, 213 (6th Cir. 1995); *Todd v. Comm'r of Soc. Sec.*, 44 F. App'x 690, 691 (6th Cir. 2002); *Gordon v. Comm'r of Soc. Sec.*, No. 13-14881, 2015 WL 357054, at *7 n.1 (E.D. Mich. Jan. 27, 2015).

The relevant period for the ALJ's assessment was therefore April 1, 2021, the alleged onset date, through September 30, 2022, the date last insured.

From there, the ALJ employed the five-step sequential evaluation process. At **Step One**, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity" from April 1, 2021, through September 30, 2022. (ECF No. 5-1, PageID.86). At **Step Two**, the ALJ found that Plaintiff suffered from the following severe impairments under 20 C.F.R. § 404.1520(c): bipolar disorder, depression, and anxiety. (*Id.*). But the ALJ concluded at **Step Three** of the analysis that none of Plaintiff's impairments, nor a combination of her impairments, met or medically equaled the severity of one of those listed in the applicable regulations. (*Id.* at PageID.86–87).

Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: must have a low stress job, with only occasional decision-making, only occasional changes in work setting, no fast-paced production work (e.g., assembly line work or work where the pace is set by others); no interaction with the public, only occasional interaction with coworkers with no tandem tasks; must avoid exposure to unprotected heights and climbing ladders, ropes, and scaffolds.

(*Id.* at PageID.89). The ALJ noted that this RFC was the same as that from the prior decision because "[m]edical evidence from the unadjudicated period does not demonstrate a significant change in the claimant's mental functioning through the

date last insured."[2]  (*Id.*).  At **Step Four**, having consulted a Vocational Expert ("VE"), the ALJ concluded that Plaintiff has past work as a sales representative (telephone services), but she "was unable to perform any past relevant work."  (*Id.* at PageID.92–93).[3]

The ALJ next concluded, at **Step Five**, that, "through the date last insured, . . . the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  (*Id.* at PageID.94). Based upon the testimony of the VE, the ALJ identified the following as representative occupations: a "[h]and packager," a "[s]tock selector," and a "[s]alvage laborer."  (*Id.*).  Accordingly, the ALJ concluded that Plaintiff "has not

---

[2] The RFC as determined by the ALJ in the decision from March 2019 is virtually the same as that determined here.  The only difference is that the ALJ in this matter added that Plaintiff "must avoid exposure" to "climbing ladders, ropes, and scaffolds" along with avoiding exposure to unprotected heights.  (ECF No, 5-1, PageID.157).

[3] In the March 2019 decision, the ALJ determined that Plaintiff had past relevant work as a telecommunications manager from 1999–2006 and earned wages consistent with substantial gainful activity from this work.  (ECF No. 5-1, PageID.92).  For the period under consideration here, the ALJ determined that Plaintiff had past work as a sales representative (telephone services) from June 2009–September 2009 and earned wages consistent with substantial gainful activity through this work.  (*Id.*).  This position corresponded with Dictionary of Occupational Titles ("DOT") 253.527-010, SVP 6 (over 1-year up to and including 2 years).  (*Id.*).  But Social Security Ruling ("SSR") 82-62 requires that past relevant work, from which there was substantial gainful activity, be performed within fifteen years before the date last insured.  (*Id.*); *see also* SSR 82-62, 1982 WL 31386 (Jan. 1, 1982).  Since Plaintiff's work as a telecommunications manager falls outside that fifteen-year period, the ALJ concluded that that employment did not qualify as past relevant work.  Even so, the VE testified that the skills, training, and expertise derived from that position would allow Plaintiff to achieve average performance on Plaintiff's first day working as DOT 253.257-010.  (ECF No. 5-1, PageID.93). The ALJ therefore determined that Plaintiff had past relevant work in this latter position despite not performing work in that position for 1–2 years.  (*Id.*).

been under a disability [. . .] at any time from April 1, 2021, the alleged onset date, through September 30, 2022, the date last insured." (*Id.*).  Based on these findings, the ALJ denied Plaintiff's claim.  (*Id.*).

## V.   DISCUSSION

Plaintiff presents two issues for the Court to consider in its review of the Commissioner's decision: (1) whether the ALJ properly considered the opinion evidence in the record such that substantial evidence supports her physical RFC determination; and relatedly (2) whether the ALJ properly considered the opinion evidence in the record such that substantial evidence supports her mental RFC determination.  (ECF No. 8, PageID.851–59).

### A.   The ALJ's Consideration of Medical Opinion Evidence regarding Plaintiff's Physical RFC

Plaintiff's first contention is that the ALJ did not properly evaluate the persuasiveness of the medical opinions of state agency medical consultants regarding physical limitations on Plaintiff's ability to work.  (*Id.* at PageID.851–55).

In September 2022, non-examining State Agency medical consultant Dr. Natalie Gray opined on Plaintiff's physical limitations.  (ECF No. 5-1, PageID.173–74).  Specifically, Dr. Gray found the Plaintiff could: occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for a total of about 6 hours in a workday; sit for a total of about 6 hours in a workday; frequently

climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; limited left near acuity, depth perception, accommodation, color vision, and field of vision; and avoid concentrated exposure to hazards. (*Id.*). On October 18, 2022, non-examining State Agency medical consultant Dr. Thomas Flake, Jr., also reviewed Plaintiff's medical records and opined that Plaintiff had the same physical limitations set forth in Dr. Gray's opinion. (*Id.* at PageID.184–85).

The ALJ ultimately determined that these opinions were "not persuasive" because "they are inconsistent with medical records from the insured period." (*Id.* at PageID.91–92). Plaintiff says that this determination is erroneous because it is unclear "how the record during the relevant period is inconsistent with the doctor's [sic] opinions." (ECF No. 8, PageID.853). On this point, Plaintiff focuses on an August 2021 trip to the emergency room after Plaintiff fell from her deck and injured her lower back. During that ER visit, Plaintiff complained of lower back pain and some dizziness, and an X-ray of her lumbar spine "did not show any acute process" but did reveal moderately advanced facet arthrosis at L5/S1. (*Id.*). From there, Plaintiff suggests that the ALJ's broad reference to the medical evidence in the record is inconsistent with federal regulations. (*Id.* at PageID.854). To that end, she argues that the ALJ committed reversible error by not considering Dr. Gray's and Dr. Flake's opinions that Plaintiff could only frequently climb

ramps/stairs, balance, stoop, kneel, crouch, and crawl.  (*Id.*).  Thus, the argument goes, the ALJ's decision was not based on substantial evidence.  (*Id.*).

The Commissioner contends that Plaintiff is mistaken.  First, he points out that the ALJ discussed Plaintiff's physical examinations during the relevant period and acknowledged that those exams revealed normal findings.  (ECF No. 10, PageID.869–70).  The ALJ also noted that Plaintiff was not prescribed any pain medication during that time.  (*Id.* at PageID.870–71).  The Commissioner also discusses how the ALJ reviewed Plaintiff's August 2021 ER visit and concluded that the lumbar facet arthrosis was not a severe impairment.  (*Id.* at PageID.871–72).  Lastly, the Commissioner suggests that the ALJ did not commit a reversible error by omitting any reference to the limitations from Dr. Gray's and Dr. Flake's opinions in the RFC determination because (1) the ALJ properly determined that those opinions were unpersuasive, and (2) the representative occupations identified at Step Five all involve no more than frequent climbing, balancing, stooping, kneeling, crouching, and crawling, so the ALJ's decision would be no different had she considered such limitations.  (*Id.* at PageID.872–73).  In all, the Commissioner says, the ALJ's decision regarding Plaintiff's physical limitations is supported by substantial evidence in the record.

In her reply brief, Plaintiff reiterates her argument that the ALJ's persuasiveness analysis is too conclusory and that, based on the lumbar facet

arthrosis finding from the August 2021 ER visit, there is substantial evidence in the record to conclude that Dr. Gray's and Dr. Flake's opinions are consistent with the record from the relevant period. (ECF No. 11, PageID.881–83).

Federal regulations require ALJs to explain how certain factors affect their evaluation of medical opinions and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c. When weighing the persuasiveness of medical opinions, ALJs consider five factors, namely (1) supportability; (2) consistency; (3) the medical source's relationship with the disability claimant; (4) the medical source's specialization in any given field, if any; and (5) other factors that tend to support or contradict the finding in a medical opinion, such as the medical source's familiarity with other evidence in the claim. *See* 20 C.F.R. § 404.1520c(c)(1)–(5). As supportability and consistency are the most important factors, ALJs need only articulate their reasoning on those factors. *See* 20 C.F.R. § 404.1520c(b)(2).

Supportability means that a medical opinion is more persuasive the "more the relevant objective medical evidence and supporting explanations presented by a medical source" support the opined limitations. 20 C.F.R. § 404.1520c(c)(1). "In practice, the supportability factor 'concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.'" *James A.M. v. Comm'r of Soc. Sec.*, No. 22-12334, 2024 WL 1224402, at *2 (E.D. Mich. Mar. 21, 2024) (quoting *Reusel v. Comm'r of Soc.*

*Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021)).

Likewise, when a medical opinion is "consistent" with the evidence from medical

and nonmedical sources in the record, that opinion is more persuasive.  20 C.F.R.

§ 404.1520c(c)(2).  In short, "consistency is about how the medical opinion

conflicts with evidence in the record, whereas supportability is about how the

medical opinion was soundly reached."  *James A.M.*, 2024 WL 1224402, at *2 n.1.

"An ALJ can satisfy his duty to consider the medical opinions by 'indirectly

attacking the supportability of the . . . opinion or its consistency with other

evidence in the record.'"  *Parker v. Comm'r of Soc. Sec.*, No. 2:20-CV-10961,

2021 WL 4205060, at *8 (E.D. Mich. July 6, 2021) (quoting *Stewart v. Comm'r of

Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020)), *report and recommendation

adopted*, 2021 WL 3508557 (E.D. Mich. Aug. 10, 2021).  And even if the ALJ

does not use the terms "supportability" or "consistency," that "does not necessarily

mean the ALJ did not consider these factors."  *James A.M.*, 2024 WL 1224402, at

*2 (citation omitted).

While Plaintiff recognizes that federal regulations require the ALJ to assess

the supportability and consistency factors when evaluating the persuasiveness of a

medical opinion, she does not expressly argue whether the ALJ's analysis is

defective regarding one factor or both.  Even so, the Court finds that the ALJ's

decision regarding Plaintiff's physical limitations is supported by and consistent with substantial evidence in the record.

As it relates to Dr. Gray's and Dr. Flake's opinions, the ALJ wrote the following:

> At the initial and reconsideration levels, State agency medical consultants opined that the claimant was limited to medium exertion. These opinions are <u>not persuasive</u> because they are inconsistent with medical records from the insured period. *As discussed earlier in this decision*, most physical exams performed during the period under consideration revealed normal findings through the date last insured. The record reflects prescriptions for hypothyroid medication and eye drops, but no pain medications during the insured period.

(ECF No. 5-1, PageID.91–92) (emphasis added). As this passage indicates, the ALJ discussed Plaintiff's physical impairments earlier in her decision, namely at Step Two of the sequential evaluation process. (*Id.* at PageID.86). There, the ALJ identified the only three medically determinable physical impairments in the record for the relevant period, namely, hypothyroidism, lumbar facet arthrosis (moderate at L5-S1, mild at L4-L5), and dry eye syndrome. (*Id.*). Notably, the ALJ concluded that these ailments were "nonsevere impairments" and stated that "the record does not indicate more than minimal limitations associated with these impairments during the insured period." (*Id.*). And even though these impairments were not severe, the ALJ also noted that she considered all of the claimant's medically determinable impairments when assessing Plaintiff's RFC. (*Id.*).

14

According to federal regulations, "[a]n impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The ALJ determined that Plaintiff's physical impairments were not severe because Plaintiff's physical examinations were normal despite the identified ailments. For instance, the ALJ discussed that Plaintiff treated her hypothyroidism with levothyroxine and that her treating physician reported normal findings on Plaintiff's physical exams from April 2021 through June 2022. (ECF No. 5-1, PageID.86). The ALJ acknowledged Plaintiff's treatment records from December 2021 regarding dry eye syndrome and noted that the record showed "that the claimant's best corrected vision was 20/20 bilaterally, with full central visual fields." (*Id.*).

The ALJ even detailed Plaintiff's August 2021 ER visit. On that matter, the ALJ observed that Plaintiff's physical exam revealed low back tenderness but negative leg raising tests. (*Id.*). The ALJ also discussed the X-ray results Plaintiff emphasizes in her briefing, stating that the imagery showed lumbar facet arthrosis but otherwise showed "no significant pathology or acute process" and that "disc spaces were preserved." (*Id.*). The synopsis of Plaintiff's treatment also indicates that she initially refused pain medication before eventually agreeing to take Tylenol and being discharged in good condition. (*Id.*). And apart from Tylenol,

the ALJ noted that the record did not contain a prescription for pain medication during the insured period.  (*Id.* at PageID.92).

It is Plaintiff's contention that the ALJ's evaluation of Dr. Gray's and Dr. Flake's opinions is limited to her general reference to their inconsistency with medical evidence in the record.  But this ignores the ALJ's reference to her discussion of Plaintiff's physical impairments at Step Two which includes Plaintiff's lumbar facet arthrosis.  That discussion explained that, despite these medically determinable physical impairments, Plaintiff's physical examinations were normal and that they did not significantly limit Plaintiff's physical ability to do work activities.  In other words, the medical evidence of Plaintiff's physical impairments did not support any finding for exertional limitations and that such a finding was inconsistent with that evidence.  Accordingly, there is substantial evidence in the record to support the ALJ's decision regarding Plaintiff's physical limitations.[4]

Plaintiff's arguments to the contrary are not compelling.  As indicated, her truncated review of the ALJ's decision ignores the discussion of Plaintiff's physical impairments which touches on the normal results of Plaintiff's physical

---

[4] What's more is that there is no evidence in the record to suggest that Plaintiff had other physical limitations that arose after the March 2019 decision.  There, the prior ALJ determined that, beginning on September 20, 2018, Plaintiff "had the residual functional capacity to perform the full range of work at all exertional levels . . . ."  (ECF No. 5-1, PageID.157).

exams during the relevant period as well as Plaintiff's ER visit in August 2021. If Plaintiff's contention is simply that the ALJ did not repeat that discussion a second time, then her position lacks merit since the ALJ was not required to repeat her evaluation of that evidence. *See, e.g.*, *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[T]he ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three."); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (remarking that the ALJ did not need to repeat her discussion of treatment records a second time when determining that a medical source's opinion was inconsistent with those records). Conspicuously, Plaintiff did not contest this authority after the Commissioner brought it to her attention. (ECF No. 10, PageID.869–70 n.2).

While Plaintiff emphasizes the "moderately advanced" nature of the lumbar facet arthrosis diagnosis, she does not point to any evidence in the record that confirms that Plaintiff experienced any functional limitations as a result of that condition. Moreover, neither Dr. Gray nor Dr. Flake referred to Plaintiff's lumbar facet arthrosis in their respective opinions regarding her physical limitations.[5] And in any event, it is well established that "disability is determined by functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r*

---

[5] At most, Dr. Gray referred to "acute LBP after fall" with "LBP" presumably referring to "lower back pain." (ECF No. 5-1, PageID.174). That said, there is no mention of Plaintiff's lumbar facet arthrosis in Dr. Gray's notes explaining her opined RFC.

*of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *see also Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).

Finally, Plaintiff suggests that the ALJ committed reversible error because she did not account for Dr. Gray's and Dr. Flake's opinions that Plaintiff could only frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. First, because the ALJ deemed Dr. Gray's and Dr. Flake's opinions unpersuasive—and that decision is supported by substantial evidence—she did not need to include those limitations in the RFC determination.

And second, as mentioned, the Court will not affirm the ALJ's decision if SSA failed to follow its own regulations *and* the resulting error was prejudicial towards Plaintiff. *See Rabbers*, 582 F.3d at 651 (citation omitted). Even if the ALJ erred in her analysis of these opinions on Plaintiff's physical limitations— which she did not—the error is harmless. At Step Four, the ALJ determined that Plaintiff could not perform past relevant work based solely on the identified nonexertional limitations. It follows that if the ALJ included the exertional limitations regarding climbing, stooping, kneeling, crouching, and crawling, the outcome at Step Four regarding past relevant work would have been the same. As the Commissioner points out, the three representative occupations the ALJ identified at Step Five all involve no more than frequent climbing, balancing,

18

stooping, kneeling, crouching, and crawling based on their respective DOT entries, an observation Plaintiff did not contest. (ECF No. 10, PageID.872–73). So even if the ALJ had included such limitations in her RFC and included them with her colloquy with the VE, the result would have been the same at Step Five. And since the result would be the same if the Court were to remand the case to the ALJ to add these limitations to the RFC, any error resulting from their omission is harmless.

At bottom, the ALJ's determination regarding Plaintiff's physical limitations is supported by substantial evidence. And any error resulting from the ALJ's omission of limitations regarding climbing, balancing, stooping, kneeling, crouching, and crawling is harmless. Accordingly, Plaintiff's statement of error regarding Plaintiff's physical limitations is without merit.

### B. The ALJ's Consideration of Medical Opinion Evidence regarding Plaintiff's Mental RFC

Plaintiff's second argument is that the ALJ did not properly evaluate the medical opinions in the record regarding Plaintiff's mental limitations, particularly the opinions of Nurse Practitioner Valorie Cook. (ECF No. 8, PageID.855–59). Like with her first argument, Plaintiff suggests that the ALJ did not adequately explain how the supportability and consistency factors supported her conclusion that parts of Ms. Cook's opinions were not persuasive.

On April 9, 2022, Ms. Cook opined that Plaintiff had several mental limitations. She determined that Plaintiff's ability to do certain work activities was

19

"limited but satisfactory" as a result of her mental health conditions. (ECF No. 5-1, PageID.625–26).[6] Ms. Cook also concluded that Plaintiff's mental health conditions "seriously limited, but [did] not preclude[ ]" her ability to do other tasks, such as "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms" and "[d]eal with normal work stress" as it relates to unskilled work. (*Id.*).[7] Aside from these limitations, Ms. Cook opined that Plaintiff would likely be absent four days per month and would likely be off task at least twenty-five percent of the time. (*Id.* at PageID.624, 626). More than a

---

[6] Ms. Cook's opinion broke down Plaintiff's "mental abilities and aptitudes" based on the skills needed to do unskilled work, semiskilled and skilled work, and particular types of jobs. (ECF No. 5-1, PageID.625–26). As it relates to unskilled work, Ms. Cook opined that Plaintiff's ability to do the following was "limited but satisfactory": "[r]emember work-like procedures"; "[u]nderstand and remember very short and simple instructions"; "[c]arry out very short and simple instructions"; "[m]aintain attention for two-hour segment"; "[m]aintain regular attendance and be punctual within customary, usually strict tolerances"; "[s]ustain an ordinary routine without special supervision"; "[w]ork in coordination with or proximity to others without being unduly distracted"; "[m]ake simple work-related decisions"; "[p]erform at a consistent pace without an unreasonable number and length of rest periods"; "[a]sk simple questions or request assistance"; "[a]ccept instructions and respond appropriately to criticism from supervisors"; and "[b]e aware of normal hazards and take appropriate precautions." (*Id.* at PageID.625). With respect to semiskilled and skilled work, Plaintiff's ability to "[s]et realistic goals or make plans independently of others" was limited but satisfactory. (*Id.*). Ms. Cook also opined that Plaintiff's ability to "[a]dhere to basic standards of neatness and cleanliness" for particular jobs was limited but satisfactory." (*Id.* at PageID.626).

[7] The "seriously limited, but not precluded" determination means that Plaintiff's "ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances." (*Id.* at PageID.625). Other abilities that fell under this characterization with respect to unskilled work were Plaintiff's ability to "[g]et along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes" and "[r]espond appropriately to changes in routine work setting[s]." (*Id.*). As it pertained to semiskilled and skilled, Ms. Cook determined that Plaintiff's ability to "[u]nderstand and remember detailed instructions" and "[d]eal with stress of semiskilled and skilled work" was seriously limited but not precluded. (*Id.* at PageID.625).

year later—and roughly eight months after Plaintiff's insurance status expired—Ms. Cook provided another opinion in June 2023. (*Id.* at PageID.817–19). This second opinion mirrored the first and added that Plaintiff's ability to "[i]nteract appropriately with the general public" for particular types of jobs was limited but satisfactory as a result of her mental health conditions. (*Id.* at PageID.819).

> With respect to Ms. Cook's opinions,[8] the ALJ said the following:
>
> Cook's opinion is <u>persuasive</u> regarding limits in specific work-related mental activities she rated as limited but satisfactory . . . . It is also persuasive regarding claimant's limitations to carry out detailed instructions and deal with stress of semi-skilled and skilled work . . . . Ms. Cook's opinions regarding seriously limited areas of unskilled work,[9] time off task, [and] absenteeism are not persuasive.

(*Id.* at PageID.91). In doing so, the ALJ acknowledged Plaintiff's mental health treatment records which reflected complaints of anxiety and panic attacks as well as reports of improved symptoms with medication and mental status exams which revealed intact cognition at treatment encounters." (*Id.*). Despite reports of Plaintiff's "fluctuating mood and anxiety," the ALJ remarked that Plaintiff was always "cooperative and oriented, and denied issues with sleep or appetite." (*Id.*).

---

[8] The ALJ seemingly focused on the April 2022 opinion from Ms. Cook since it falls within the relevant period, April 1, 2021 through September 30, 2022. That said, she cited to the June 2023 opinion as well. And as noted, these opinions were essentially identical.

[9] That is, "complete a normal workday and workweek without interruption from psychologically based symptoms"; "get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes"; "respond appropriately to change in a routine work setting" and "deal with normal work stress." (ECF No. 5-1, PageID.625).

21

The ALJ further observed that Plaintiff's records from 2022 and 2023 evince a "stable mood and anxiety, with spikes mostly due to situational stressors." (*Id.*). Lastly, the ALJ noted that Plaintiff cared for her son during his own mental health crisis. (*Id.*).

Plaintiff asserts that the ALJ did not adequately explain why parts of Ms. Cook's opinions were unpersuasive. After observing that the assessment of mental limitations differs from the evaluation of physical limitations, she argues that the ALJ did not properly consider the reported "waxing and waning" of Plaintiff's mental health symptoms. (ECF No. 8, PageID.857; ECF No. 11, PageID.884). Plaintiff also contends that the ALJ mischaracterized the treatment notes from her visit with Ms. Cook in May 2023 when she said that Plaintiff was caring for her son. During that visit, Plaintiff reported that she was nervous and that she was worried about becoming manic; Ms. Cook also recorded that Plaintiff was fearful and anxious during this encounter. (ECF No. 8, PageID.857). Ultimately, Ms. Cook added hydroxyzine to Plaintiff's medication regimen to help with her increased stress and anxiety. (*Id.* at PageID.858). Plaintiff adds that this purported error is not harmless because the VE testified that if an individual were to be absent at least one day per week, all work would be precluded. (*Id.*) (citing ECF No. 5-1, PageID.135). Thus, she posits that had the ALJ properly evaluated Ms. Cook's opinions, which stated Plaintiff would be absent four time per month, she

would have determined that Plaintiff could not perform sustained full-time employment and concluded that she was disabled.  (*Id.*).

The Commissioner insists that the ALJ's decision regarding Plaintiff's mental limitations is supported by substantial evidence.  He contends that the ALJ properly reviewed Ms. Cook's treatment records as well as Plaintiff's records with other physicians, appropriately recognized that Plaintiff's mental health conditions fluctuated based on situational stressors, and recognized that Plaintiff's medications adequately treated Plaintiff's psychiatric symptoms and that mental health examinations were largely normal.  (ECF No. 10, PageID.873–78).  The Commissioner also maintains that the ALJ's assessment of the May 2023 treatment encounter with Plaintiff was proper and consistent with her characterization of the evidence in the record.  (*Id.* at PageID.877).

Upon review of the ALJ's decision regarding Plaintiff's mental limitations, the Court agrees with the Commissioner and concludes that the ALJ's decision on Plaintiff's mental limitations was in accordance with federal regulations and supported by substantial evidence.

The ALJ's discussion of Plaintiff's mental health conditions started with the prior decision from March 2019.  The ALJ who penned that decision determined that Plaintiff "should avoid all exposure to unprotected heights" and be limited "to a low stress job, defined as having only occasional decision making required, only

occasional changes in the work setting, and no fast-paced production work." (ECF No. 5-1, PageID.89). That ALJ also concluded that Plaintiff "should avoid any interaction with the public" and be limited to "only occasional interaction with coworkers with no tandem tasks." (*Id.*). Here, the ALJ observed that "[m]edical evidence from the unadjudicated period does not demonstrate a significant change in the claimant's mental functioning through the date last insured." (*Id.*). Accordingly, the RFC here was consistent with the prior RFC. (*Id.*).

From there, the ALJ summarized Plaintiff's mental health treatment records. She reviewed the records from her psychiatrist Dr. Mohammed Jafferany who treated Plaintiff for bipolar disorder and anxiety since 2018. Dr. Jaffernay "reported unremarkable findings on [Plaintiff's] mental exams" from July 2020 to September 2022; specifically, Dr. Jafferany recorded that Plaintiff was "cooperative, made good eye contact, and exhibited normal psychomotor activity, normal speech, normal mood and affect, logical thought process, and intact memory and cognition." (*Id.* at PageID.90). The ALJ acknowledged that Plaintiff herself reported to Dr. Jafferany that "her medications were helpful in reducing anxiety and improving sleep" and "denied feeling overly depressed, anxious, and mood swings." (*Id.*).

Nurse Valerie Cook worked at Dr. Jafferany's office, Jafferany Psychiatric Services. The ALJ's synopsis covered Plaintiff's treatment encounters with

24

Ms. Cook in April 2022 and September 2022, the only such appointments which occurred during the relevant period. During the first appointment, Plaintiff indicated that she was experiencing increased anxiety and stress resulting, in part, from the sudden loss of a family member. (*Id.*). Ms. Cook recorded that Plaintiff felt that her medication helped keep her mood stable but asked to be prescribed Vistaril to help with her increased anxiety and prevent panic attacks. (*Id.*). Ms. Cook ultimately provided the desired prescription but, as the ALJ noted, "reported normal findings on the claimant's mental exam, including normal psychomotor activity, mood, affect, and concentration." (*Id.*). When Plaintiff followed up with Ms. Cook in September 2022, Plaintiff stated that she had not been using Vistaril lately, denied being depressed and denied issues with sleep or appetite, and reported that she was doing well and her mood was stable. (*Id.*).

The ALJ also observed that during Plaintiff's physical treatment encounters from the relevant period, April 2021 through September 2022, the treating sources observed that Plaintiff was "alert and fully oriented, with appropriate mood and affect." (*Id.*). Moreover, the ALJ's review of the record showed that although Plaintiff "sometimes exhibited anxious or depressed mood at appointments," no treating source reported "significant social limitations in the claimant," "signs of acute anxiety," or "acute depression." (*Id.*). Nor did any treating source "report[ ] disabling limits in the claimant's attention or concentration." (*Id.*). Additional

records from before the alleged onset date showed "complaints of sadness, anhedonia, difficulty concentrating, and loss of energy" as well as anxiety and ruminating thoughts."  But the same medical source also recorded that Plaintiff "was alert, oriented, and interactive with appointments, with intact functional status and appropriate affect."  (*Id.*).

After discussing the persuasiveness of the medical opinions in the record, the ALJ then concluded her decision where she started—by comparing this case to the prior ALJ's determination in March 2019.  She noted that the prior ALJ talked about how the medical records showed anxious or depressed mood at treating encounters, but objective medical observations from that time showed intact memory and attention, organized thought process, and appropriate interactions with treating sources.  (*Id.* at PageID.92).  The ALJ in the prior decision also noted Plaintiff's reports of stability on her medication regimen.  (*Id.*).  Here, the ALJ says the record is no different.  Pointing to Plaintiff's treatment records with, *inter alia*, Dr. Jafferany and Ms. Cook during the relevant period, the ALJ stated that Plaintiff "continue[d] to demonstrate complaints of anxiety" and treating sources continued to observe that Plaintiff had a depressed or anxious mood.  (*Id.*).  At the same time, however, the record reflected "intact memory and concentration, appropriate and cooperative communication, and logical thought process."  (*Id.*).  The record also indicated that Plaintiff reported anxiety but was stable on her

medication.  (*Id.*).  Accordingly, the ALJ concluded that "[t]he record does not demonstrate significant improvement or worsening in the claimant's mental capacity since the prior decision."  (*Id.*).

So contrary to Plaintiff's contentions, the ALJ provided an in-depth summary of Plaintiff's mental health treatment records.  This summary expressly accounted for Plaintiff's fluctuating mood and anxiety while she received treatment from Ms. Cook.  (*Id.* at PageID.91).  The ALJ also explicitly noted that Plaintiff's anxiety and stress would spike as a result of situational stressors thereby acknowledging how her symptoms would, to use Plaintiff's parlance, wax and wane.  (*Id.*).  Ultimately, however, the record shows that her medication largely stabilized her condition and her mental status exams were mostly normal.  (*Id.*).  Accordingly, as detailed by the ALJ, the record showed that Plaintiff's mental capacity was largely stable and did not corroborate Ms. Cook's opinion that Plaintiff would be off task at least twenty-five percent of the time or absent from work four days a month.  And considering the record reflects "intact memory and concentration, appropriate and cooperative communication, and logical thought process," the ALJ deemed unpersuasive Ms. Cook's opinion that Plaintiff would be seriously limited in her ability to perform certain aspects of unskilled work, like dealing with normal work stress, responding to changes in the work routine, and getting along with co-workers.  In other words, the ALJ explained why the record

does not support certain aspects of Ms. Cook's opinions and articulated how the unpersuasive aspects of her opinions were inconsistent with the mental health treatment records going back to the prior ALJ's decision in March 2019.

Apart from Plaintiff's unfounded concerns regarding the ALJ's consideration of her occasionally fluctuating but otherwise stable mental health conditions, Plaintiff emphasizes the ALJ's discussion of her treatment encounter with Ms. Cook in May 2023.  (ECF No. 8, PageID.857–58).  In particular, she takes issue with the ALJ's note that Plaintiff was able to help care for her son during his mental health crisis when explaining why aspects of Ms. Cook's opinions were not persuasive.  (*Id.*).  This was an erroneous mischaracterization of Ms. Cook's treatment notes according to Plaintiff because during that visit Plaintiff reported experiencing nervousness and expressed concerns about becoming manic after moving in with her sons to help them.  (*Id.* at PageID.857) (citing ECF No. 5-1, PageID.691).  And since Ms. Cook observed Plaintiff to be fearful and anxious and prescribed Plaintiff hydroxyzine to help with Plaintiff's increased anxiety and stress, Plaintiff concludes that "[t]he ALJ's conclusion is simply not supported by the record."  (*Id.* at PageID.858).

At the outset, it should be noted that Ms. Cook's opinion from June 2023— and the treatment encounter from May 2023 that Plaintiff highlights—is several months past the date last insured, September 30, 2022.  As mentioned, to receive

28

disability benefits, Plaintiff must show that she was disabled as of the date last insured. *See Henley*, 58 F.3d at 213; *Todd*, 44 F. App'x at 691. Accordingly, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value and is relevant to the disability decision only if the evidence relates back to the claimant's condition prior to the expiration of her date last insured." *Ferguson v. Comm'r of Soc. Sec.*, No. 2:16-CV-13289, 2018 WL 912882, at *6 (E.D. Mich. Jan. 22, 2018) (quoting *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004) and *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003)) (citation modified), *report and recommendation adopted sub nom. Ferguson v. Berryhill*, 2018 WL 902281 (E.D. Mich. Feb. 15, 2018); *see also Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) (per curiam) (holding that a treating physician's opinion, based on a treatment record that began eight months after the date last insured, was not entitled to substantial weight).

To the extent that the ALJ considered medical evidence and opinions after the date last insured, the ALJ properly looked at evidence that related back to Plaintiff's mental health conditions. For instance, she recorded that "[i]n 2022 and 2023, [Plaintiff] generally indicated stable mood and anxiety, with spikes mostly due to situational stressors." It is in this context that the ALJ then referred to the May 2023 treatment encounter with Ms. Cook and Plaintiff's ability to care for her

29

sons.  And ultimately, the ALJ concluded that Plaintiff's mental condition had neither improved nor worsened since the prior ALJ's decision from March 2019.[10]

More importantly, the ALJ's review of that evidence is, contrary to Plaintiff's position, consistent with the broader record of Plaintiff's mental health treatment.  During the May 2023 treatment encounter, Plaintiff reported that she moved in with her sons who had previously moved out of her home and were struggling with living by themselves; this change in her routine resulted in Plaintiff feeling nervous that she would become manic.  (ECF No. 5-1, PageID.691).  Ms. Cook also recorded that Plaintiff had a "fearful/anxious" affect.  (*Id.* at PageID.693).  Otherwise, Plaintiff indicated that prior to changing her routine she had been "doing good mood wise" and had no issues with sleep or appetite.  (*Id.* at PageID.691).  Apart from her affect, Plaintiff's mental status exam from that appointment was also normal.  (*Id.* at PageID.693–94).  And while Ms. Cook added hydroxyzine to Plaintiff's medication regimen, it is worth noting that Plaintiff requested "a refill" of that medication.  (*Id.* at PageID.691).  Since hydroxyzine was not among Plaintiff's "current medications" on the day of the treatment encounter, (*id.* at PageID.691), it follows that this medication was one that Plaintiff would take when experiencing increased stress and anxiety—much

---

[10] The ALJ did not expressly refer to the timing of Ms. Cook's second opinion.  This is likely because it was virtually identical to her first opinion.  And in any event, the ALJ's assessment of evidence beyond the date last insured was proper.

like the Vistaril prescription from Plaintiff's April 2022 treatment encounter with Ms. Cook, a prescription that Plaintiff was not using in September 2022 when she reported she was doing well.  Thus, Plaintiff's May 2023 treatment encounter with Ms. Cook is in line with the ALJ's statement that Plaintiff's mood and anxiety was stable in 2023 with occasional spikes resulting from situational stressors, like moving in with her son.  (*Id.* at PageID.91).  And though the change in routine exacerbated Plaintiff's mental health symptoms, it does not change the fact that she moved in with her son to help care for him—which is precisely what the ALJ wrote in her decision.  (*Id.*).

In all, Plaintiff's statement of error regarding the ALJ's treatment of her mental limitations is unfounded.  The ALJ detailed Plaintiff's mental health treatment records at length, noted that her condition was mostly stable on her medications with occasional fluctuations, and observed that there was no material change in Plaintiff's condition since the previous ALJ's decision in March 2019. And the ALJ's discussion of evidence accumulated after the date last insured related back to Plaintiff's mental health and showed that Plaintiff's condition at that time was consistent with the broader record.  In short, the ALJ's evaluation of Plaintiff's mental limitations and particularly her evaluation of Ms. Cook's opinions was supported by substantial evidence in the record.

## VI.  CONCLUSION

Plaintiff has the burden of proof on her statements of error.  *Walters*, 127 F.3d at 529.  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, Plaintiff's *Motion for Summary Judgment* (ECF No. 8) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 10) is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.


Date: March 24, 2026                              s/Curtis Ivy, Jr.
                                                  Curtis Ivy, Jr.
                                                  United States Magistrate Judge

32